JOHN J. O'BRIEN *v.* UNITED STATES ALUMINUM COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued November 8—decided December 21, 1944.

*Edward J. McCarthy,* for the appellant (defendant).

*Henry J. Lyons,* with whom, on the brief, was *J. Kenneth Bradley,* for the appellee (plaintiff).

DICKENSON, J.   The commissioner's award was based upon a finding that the plaintiff suffered an injury to his eye from a flying particle of metal while in the employ of the defendant.   The defendant does not dispute the fact that the plaintiff received an injury and that some time after this his vision was found to be impaired.   Its contention is that the impairment arose, not from the injury, but from a posterior polar cataract that was congenital and progressive.   It assigns error in the refusal of the trial court to correct the commissioner's finding and in the court's judgment accepting this, claiming that the finding was based upon expert opinion which was predicated on false premises.

The trial court found the following facts:   The plaintiff while polishing or burring a cylinder head in the defendant's employ on September 2, 1942, was

struck in the right eye by a metal chip and was given first aid for the ensuing pain. He continued to work the four following days and was then, at his request, referred to a doctor, who examined him and sent him to Dr. Warner, an oculist. Dr. Warner examined him on September 12, had x-rays taken the following day and continued to treat him almost daily until October 27. Meanwhile the plaintiff continued to report for work but was unable to perform his customary work and as a result of a complaint by his foreman gave up his job on October 12.

On June 4, 1942, the plaintiff had been classified as 1-A under the selective service system after examination by a physician who certified to a loss of vision of 5 per cent of the right eye. The plaintiff was called up for induction into the armed services on October 21 and was again examined, and it was found he had a loss of vision of 37 per cent in his right eye and a traumatic opacity of that eye. Observation for one month was recommended. He was examined by Dr. Morrissey in Yonkers, New York, who filed a report under date of May 24, 1943, in respect to which the commissioner made the following findings: "Upon the history set forth in his report under date of May 24, 1943, Dr. James G. Morrissey of Yonkers, New York concludes that the loss of vision sustained by claimant in his right eye is the result of the injury sustained in September, 1942, as aforesaid. The conclusion of Dr. Morrissey is adopted as the finding of the Commissioner herein." It seems an inescapable conclusion from this that the commissioner's finding and award were based on Dr. Morrissey's opinion as appears in his report. This report is as follows:

"Examination of Mr. John Edward O'Brien, 23 Highland Avenue, Tuckahoe, N. Y., was made, and showed a loss of vision in right eye due to injury sus-

tained in September, 1942. Mr. O'Brien gives a history of having been working on airplane heads, as a polisher, without complete protection of eyes with proper appliance, when particles from chipper's bench struck him in right eye. He was treated by first aid and subsequent medical doctor, without getting relief or improvement.

"He states he had been examined previous to accident by Service Board and had been given a rating of 20/30 vision, each eye. After accident he was again examined and vision in right eye caused him to be rejected.

"The opacity in Mr. O'Brien's right lens, according to its size, structure and position, and assuming that he has no other difficulty, or defect, that we can find at this time, and that the x-rays do not show any foreign body, either in the lens or cornea, or in no other portion of the globe, and according to his service record of June 4, 1942, which was normal at the time of examination by a man outstanding in his field, in the community in which Mr. O'Brien lives, it is my opinion, that the loss of vision is due to the opacity in the lens, as a result of the injury sustained in September, 1942."

The defendant contends that the facts upon which Dr. Morrissey's opinion is based, as evidenced in this report, are so inadequate and erroneous as to require the trial court to refuse to accept the commissioner's finding and award. In this connection it seeks corrections of the finding to the effect that the other physicians who examined the plaintiff found he was suffering from a congenital posterior polar cataract; that he was disqualified for military service because of an internal derangement of his left knee and not because of loss of vision; that Dr. Morrissey's examination was made without an x-ray and that his con-

clusion was based upon the assumption that there was nothing else wrong with the claimant's eye, which he could not find on May 24, 1943.

Such of these facts as properly might be added to the finding would not change the result. The opinions of other physicians would be only contradictory evidence. All the physicians were agreed upon an opacity of vision. Dr. Morrissey concluded it resulted in loss of vision as a result of the injury. The defendant's physicians thought it was congenital. Dr. Morrissey stated that he assumed the plaintiff had no other difficulty, or defect, that he could find at the time. This was the equivalent of stating that he could discover no defect other than the opacity which affected the plaintiff's vision. As to his assumption that an x-ray examination would not disclose any foreign body, it is not claimed that there was any in the eye at that time. A further assumption of Dr. Morrissey was that the plaintiff's vision was normal at the time of his preinduction examination prior to the accident, and that after it he was again examined and vision in his right eye caused his rejection. Reference to the exhibits discloses that the right eye was found to be 5 per cent defective before the accident. There is nothing in the record to indicate, however, that this was important enough to affect the doctor's opinion. As to the claim that the plaintiff was rejected because of a knee condition and not for defective vision, an examination of the exhibits indicates that, while exhibit D contains the statement that the plaintiff was disqualified for military service by reason of his injured knee, both this and the other induction exhibits refer to opacity of the eye rendering the vision 37 per cent defective. The exhibits sufficiently support Dr. Morrissey's hypothesis that the defective vision was one of the causes of rejection.

Supporting the conclusion that the defective vision resulted from the injury are the facts that the plaintiff's vision did not affect his ability to perform his work before the accident but prevented him from performing it after; and that before the accident the defect in vision was 5 per cent, while after, it was 37 per cent.

We may not say, upon all of the evidence, that the court was in error in refusing to correct the finding and in dismissing the appeal.

There is no error.

In this opinion the other judges concurred.